**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CORNICE & ROSE INTERNATIONAL, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> ACUITY, A MUTUAL INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendant. ) | No.: 1:21-cv-6112 |

**COMPLAINT**

Plaintiff, CORNICE & ROSE INTERNATIONAL, LLC, ("C&R"), for its Complaint against Defendant ACUITY, A MUTUAL INSURANCE COMPANY ("Acuity"), alleges as follows:

**THE PARTIES**

1. C&R is, and at all times relevant hereto was, a Limited Liability Company organized and existing under the laws of the State of Illinois with its principal place of business in Barrington, Illinois. At time of the filing of this Complaint, and at all other relevant times, the members of C&R were James Gray and Stephanie Gray, both of whom are, and at all times relevant hereto were, citizens of the State of Illinois. C&R is therefore considered a citizen of the State of Illinois.

2. Acuity is, and at all times relevant hereto was, a property and casualty insurance company incorporated under the laws of the State of Wisconsin with its principal place of business located at 2800 South Taylor Drive, Sheboygan, Wisconsin. Acuity is therefore considered a citizen of the State of Wisconsin.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the actual controversy described herein pursuant to 28 U.S.C. §1332(a) because this is a civil action between citizens of different States and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs. With respect to the matter in controversy, a Counterclaim has been brought against C&R in the United States District Court for the Northern District of Iowa seeking damages in excess of $3.4 million and sounding in professional malpractice, equitable indemnity, breach of contract, and negligence. Acuity issued a series of liability policies to C&R, but has disclaimed any obligation to defend or indemnify C&R in connection with said "Underlying Counterclaim."

4. This Court is empowered to declare the rights and obligations of the parties hereto pursuant to 28 U.S.C. §2201(a) because there is, as described in full herein, an actual and justiciable controversy between C&R and Acuity.

5. This Court has personal jurisdiction over Acuity under the Illinois Long Arm Statute because Acuity has, as described in full herein, transacted business within the State of Illinois and has contracted to insure a person or risk located within the State of Illinois at the time of contracting. This Court also has personal jurisdiction over Acuity because, by issuing the policies of insurance described herein to C&R, an Illinois limited liability company, and to an Illinois address, and insuring a risk located primarily in Illinois, Acuity has purposefully availed itself of the protections of Illinois law and the privilege of doing business within the State of Illinois.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this action occurred within this District, including but not limited to the delivery of the insurance policies in question.

## THE ACUITY POLICIES

7. On or about December 4, 2013, Acuity issued to C&R a policy of Commercial General Liability Insurance under policy No. K81041 for the policy period of December 4, 2013 to December 4, 2014. Acuity subsequently issued yearly renewal insurance Commercial General Liability policies to C&R for the policy periods of December 4, 2014 – December 4, 2015, December 4, 2015 – December 4, 2016, December 4, 2016 – December 4, 2017, December 4, 2017 – December 4, 2018, December 4, 2018 – December 4, 2019 and December 4, 2019 – December 4, 2020. The subject policies, hereinafter referred to as the "Acuity Policies" are attached hereto as Exhibits 1 through 7.

8. The Insuring Agreements of "Coverage A" of each of the Acuity Policies state, in part, as follows:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury* or *property damage* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages….
>
> **b.** This insurance applies to *bodily injury* or *property damage* only if:
>
>  (1) The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory*;
>
>  (2) The *bodily injury* or *property damage* occurs during the policy period.

9. Each of the Acuity Policies define *occurrence* as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

10. Each of the Acuity Policies define *property damage* as follows:

> *Property damage* means:

3

      **a.** Physical damage to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.

11. None of the Acuity Policies contain an exclusion barring coverage for any *property damage* in any way arising out of professional services rendered by C&R.

## THE UNDERLYING COUNTERCLAIM

12. On September 9, 2021, Four Keys, LLC ("Four Keys") and First Security Bank & Trust Company ("FSBT"), filed a Counterclaim against C&R in the matter styled *Cornice & Rose, International, LLC v. Four Keys, LLC,* Case No. 6:20-cv-2097, United States District Court for the Northern District of Iowa. A copy of the "Underlying Counterclaim" is attached as Exhibit 8.

13. The Underlying Counterclaim alleges that, on October 20, 2014, C&R entered into a Standard Form of Agreement between Owner and Architect, AIA Doc. B101-2007 (the "Agreement") with McQuillen Place Company, LLC, under which C&R provided architectural services related to the design and construction of the building known as "McQuillen Place" in Charles City, Iowa.

14. A copy of the Agreement was attached as an exhibit to the Counterclaim.

15. The Underlying Counterclaim further alleges that FSBT first provided mortgage financing for the McQuillen Place project and subsequently "purchased" any causes of action held McQuillen Place, LLC from its Bankruptcy Trustee pursuant to a "Bill of Sale."

16. The Underlying Counterclaim further alleges that Four Keys purchased the McQuillen Place building on April 24, 2020.

17. The Underlying Counterclaim further alleges, in the most general terms that "C&R breached their duty as an architect by failing to provide design in accordance with the standard of care."

18. Subsequently, the Underlying Counterclaim attempts to allege a list of "problems with the building" as follows:

   a. Improper installation of a roof vapor barrier;
   b. Improper flashing of the tie in between the building and its clock tower;
   c. To tall kitchen cabinetry blocking access to windows;
   d. Toilets placed too close to windows;
   e. Exterior Insulation finishing system (EIFS) installed over the exterior of the building;
   f. Improper "design or installation" resulting from stone "installed" around windows prior to EIFS application;
   g. Lack of a suitable flooring finish;
   h. Unsuitable water heating coverings installed;
   i. Failure to install moisture resistant ceiling tile;
   j. Installation of inadequate stairway handrails;
   k. Installation of inadequate heating, ventilating and air conditioning (HVAC) for each unit;
   l. Installation of a not-to-code elevator that had to be replaced;
   m. "Too low" plumbing installation;
   n. Lack of a water meter or meter shut-off value where water entered the building;
   o. Improperly cut countertops;
   p. Improper electrical system;
   q. Out of plumb walls;
   r. Unacceptable drywall workmanship; and
   s. Use of a "torpedo heater" without ventilation.

19. The Underlying Counterclaim alleges that a purported lack of attic space ventilation and purported lack of a vapor barrier caused the plywood roof sheathing and trusses to suffer rot.

20. The Underlying Counterclaim further alleges that the alleged use of a "torpedo heater" without ventilation left residue on surfaces that required treatment before surfaces could be finished.

21. The Underlying Counterclaim further alleges that the building was "not suitable for occupancy and use without a substantial investment in the repair and completion of the project."

22. The Underlying Complaint alleges that "Four Keys and FSBT suffered damages of payments to third-parties, including but not limited to Dean Snyder Construction, to repair, complete, modify and bring the project to the applicable standards and make it ready for occupancy."

23. The Agreement, which was attached as an exhibit to, and thus made part of the Counterclaim, states in part that:

> The Architect shall not have control over, charge of, or responsibility for the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Word, nor shall the Architect be responsible for the Construction Manager's failure to perform the Work in accordance with the requirements of the Contract Documents. The Architect shall be responsible for the Architect's negligent acts or omissions, but shall not have control over or charge of, and shall not be responsible for, acts or omissions of the Construction Manager or of any other persons or entitled performing portions of the Work.

## C&R's NOTICE OF SUIT AND ACUITY'S IMMEDIATE DISCLAIMER OF COVERAGE

24. On or about October 7, 2021, C&R notified Acuity of the Counterclaim in accordance with the terms and conditions of the Policies.

25. Three business days later, on October 12, 2021, Acuity disclaimed any duty to defend or indemnify C&R in connection with the Counterclaim. A copy of Acuity's October 12, 2021 disclaimer letter is attached as Exhibit 9.

26. Acuity's stated basis for its disclaimer of coverage is that "the Counterclaim does not involve an 'occurrence' resulting in 'property damage' that is not otherwise subject to a policy exclusion."

27. While asserting that "[u]nder Illinois law, deficient workmanship resulting in the repair and replacement of C&R's own work is not considered an accident," Acuity's October 12,

6

2021 disclaimer letter fails to identify which part of C&R's own alleged "work" was required to be repaired or replaced.

28. Acuity's October 12, 2021 disclaimer letter makes no mention of the provision of the Agreement which states that C&R was not to have any control over, charge of, or responsibility for the construction means, methods, techniques, sequences or procedures.

29. Acuity's October 12, 2021 disclaimer letter makes no mention of the provision of the Agreement which states that C&R did not have control over or charge of, and was not responsible for, acts or omissions of the Construction Manager or of any other persons or entitled performing portions of the Work

30. While asserting that the Counterclaim "merely alleges economic loss for the repair and replacement of C&R's own work and disappointed Commercial expectations, and while further asserting that this is allegedly not considered "property damage" under Illinois law, Acuity's October 12, 2021 letter fails to acknowledge that rotting of plywood roof sheathing and trusses, and residue on surfaces that required treatment constitutes physical damage to tangible property.

31. Also while asserting that the Counterclaim "merely alleges economic loss for the repair and replacement of C&R's own work and disappointed Commercial expectations, and while further asserting that this is allegedly not considered "property damage" under Illinois law, Acuity's October 12, 2021 letter further fails to acknowledge that the Underlying Counterclaim alleges loss of use of tangible property when it alleges, on more than one occasion, that the subject property was not suitable for occupancy.

32. While asserting that several exclusions to coverage apply, Acuity's October 12, 2021 disclaimer letter fails to provide any facts to support this assertion.

## COUNT I – BREACH OF CONTRACT

33. C&R repeats and re-alleges each and every allegation contained within paragraphs 1 through 32 above, as if set forth in full herein.

34. The Acuity Policies are valid and enforceable contracts under Illinois law.

35. C&R has fully performed its duties and obligations under the Acuity Policies by, among other things, paying thousands of dollars in premiums and by timely notifying Acuity of the Counterclaim.

36. Acuity has breached its obligations under the Acuity Policies by:

   a. refusing to defend or indemnify C&R in connection with the Counterclaim;

   b. wrongfully and incorrectly applying Illinois case law by taking the position that the Counterclaim does not seek damages because of *property damage* caused by an *occurrence* as defined by the Acuity Policies;

   c. wrongfully and incorrectly failing to acknowledge that the Counterclaim seeks damages because of physical damage to tangible property and/or loss of use of tangible property;

   d. wrongfully and incorrectly failing to acknowledge that the Counterclaim alleges construction and installation defects, while at the same time the Agreement attached to the Counterclaim specifically states that C&R had no responsibility with respect to the construction means, methods, techniques, sequences or procedures, nor did C&R have any control over or charge of, and was not responsible for, acts or omissions of the Construction Manager or of any other persons or entitled performing portions of the Work;

    e.    relying upon exclusions to coverage without justifying said reliance upon any facts pled in the Underlying Counterclaim.; and

    f.    otherwise failing to act in accordance with the terms and conditions of the Acuity Policies and applicable Illinois law.

37.    As a result, C&R has been and will continue to be damaged by Acuity's breach of Acuity's obligations under the Acuity Policies, including but not limited to being forced to fund its own defense in connection with the Underlying Counterclaim.

## COUNT II – DECLARATORY JUDGMENT

38.    C&R repeats and re-alleges each and every allegation contained within paragraphs 1 through 37 above, as if set forth in full herein.

39.    Acuity's October 12, 2021 disclaimer of coverage had forced C&R to fund its own defense, and potentially fund a settlement reached, or judgment entered, in connection with the Underlying Counterclaim, thus creating an actual, justiciable and ripe controversy, thus empowering this Court to declare the rights and obligations of the parties hereto under the Acuity Policies.

40.    The Underlying Counterclaim seeks damages because of *property damage* caused by an *occurrence* and *property damage* that took place during the policy periods of the Acuity Policies.

41.    No exclusion to coverage applies, and C&R has not breached any condition precedent to coverage.

42.    Therefore, C&R is entitled to a judicial declaration that Acuity is obligated to defend C&R in connection with the Underlying Counterclaim.

43. Further, C&R is entitled to a judicial declaration that Acuity is obligated to indemnify C&R for any settlement reached, or judgment entered, in connection with the Underlying Counterclaim.

## COUNT III – STATUTORY REMEDY UNDER 215 ILCS 5/155

44. C&R repeats and re-alleges each and every allegation contained within paragraphs 1 through 43 above, as if set forth in full herein.

45. Section 155 of the Illinois Insurance Code states that, wherein there is in issue regarding the liability of an insurance company under a policy or policies of insurance, and it appears to the court that such action by the insurance company is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees and other costs, plus a statutory penalty as set forth therein.

46. Even a cursory examination of the case law would have revealed the Seventh Circuit's rulings in *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*¸ 126 F. 2d 886 (7th Cir. 1997) and *Westfield Ins. Co. v. National Decorating Serv., Inc.*, 863 F.2d 699 (7th Cir. 2017), and *Ohio Cas. Ins. Co. v. Bazzi Construction Co., Inc.*, 815 F.2d 1146 (7th Cir. 1987), under each of which coverage should be found to apply under the Acuity Policies for the Underlying Counterclaim.

47. Based upon information and belief, rather than conduct a proper investigation and analysis of the allegations of the Underlying Counterclaim, Acuity simply instructed an outside law firm draft its disclaimer letter to C&R.

48. Based upon further information and belief, the attorney who drafted the disclaimer letter issued to C&R on October 12, 2021 is an associate attorney who has been licensed to practice law for no more than three years.

49. Based upon further information and belief, the disclaimer letter issued by Acuity to C&R on October 12, 2021 was based upon a boilerplate form used for claims against construction contractors.

50. Therefore, Acuity's disclaimer was vexatious and unreasonable, thus entitling C&R to the statutory remedies set forth in Section 155 of the Illinois Insurance Code.

WHEREFORE, the Plaintiff, CORNICE & ROSE INTERNATIONAL, LLC, prays this Honorable Court to:

A. Enter judgment in its favor and against Acuity on C&R's Breach of Contract cause of action set forth herein;

B. Award C&R damages caused by Acuity's breach of the Acuity Policies in an amount to be proven;

C. Find and declare that Acuity is under a duty to defend C&R in connection with the Underlying Counterclaim;

D. Find and declare that Acuity is obligated to indemnify C&R for any settlement reached in connection with the Underlying Counterclaim and/or any judgment entered in connection with the Underlying Counterclaim;

E. Award Acuity its attorneys' fees, costs and statutory penalties set forth in Section 155 of the Illinois Insurance Code; and

F. Grant C&R any and all further relief that this Honorable Court may deem equitable and just.

Dated: November \_\_\_, 2021	Respectfully submitted,

/s/ Rostyslaw J. Smyk
Rostyslaw J. Smyk (#6255495)
Ruberry, Stalmack & Garvey, LLC
10 S. LaSalle St, Suite 1800
Chicago, IL  60603
Tel:	312-466-8050
Fax:	312-466-8055
ross.smyk@ruberry-law.com
	Attorney for Plaintiff,
	Cornice & Rose International, LLC